UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------

JACOB FETMAN,

                                 Appellant,            **MEMORANDUM & ORDER**
                                                       20-CV-1101 (MKB)
                  v.

ROBERT MUSSO *as Trustee*,

                                 Appellee.
----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

        Appellant Jacob Fetman, proceeding *pro se*, filed this appeal on February 28, 2020,

arising from a bankruptcy proceeding in the United States Bankruptcy Court for the Eastern

District of New York (the "Bankruptcy Court"), under Chapter 7 of the United States

Bankruptcy Code, 11 U.S.C. § 101 *et seq.*  (Notice of Appeal, Docket Entry No. 1.)  An

involuntary Chapter 7 bankruptcy petition was filed against Appellant on August 11, 2015 (the

"Bankruptcy Proceeding"), (*see* Involuntary Petition, *In re Fetman*, No. 15-43716 (Bankr.

E.D.N.Y. Aug. 11, 2015), Docket Entry No. 1),[1] and on October 28, 2015, Appellee was

appointed as the trustee, (Notice of Appointment of Trustee, *In re Fetman*, No. 15-43716 (Bankr.

---

        [1]  The Court takes judicial notice of the documents filed in Appellant's bankruptcy case.
*See Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("A
court may take judicial notice of a document filed in another court not for the truth of the matters
asserted in the other litigation, but rather to establish the fact of such litigation and related
filings." (quoting *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d
66, 70 (2d Cir. 1998))); *Tingling v. U.S. Dep't of Educ.*, 611 B.R. 710, 715 (E.D.N.Y. 2020)
(taking judicial notice of the documents filed in the debtor's bankruptcy case); *JP Morgan Chase
Bank N.A. v. JP Morgan Chase Bank N.A. (In re Coleman)*, No. 19-47236, 2020 WL 5531557, at
*1 (E.D.N.Y. Sept. 15, 2020) (reviewing the "publicly filed documents in the [b]ankruptcy
[c]ourt to ascertain whether there might be a viable challenge to any of the [b]ankruptcy [c]ourt's
[o]rders" when appellant failed to designate the record on appeal as required by Rule 8009).

E.D.N.Y. Oct. 28, 2015), Docket Entry No. 16).  During the Bankruptcy Proceeding, on May 28, 2019, Appellant commenced an adversary proceeding against Appellee (the "Adversary Proceeding"), alleging self-dealing, self-enrichment, and "gross misconduct."  (*See* Complaint, *Fetman v. Musso (In re Fetman)*, No. 19-1067 (Bankr. E.D.N.Y. Feb. 14, 2020), Docket Entry No. 1.)

Appellant appeals from the Bankruptcy Court's February 14, 2020 order in the Adversary Proceeding granting Appellee's motion to dismiss the Adversary Proceeding.  (Notice of Appeal 1.)  For the reasons set forth below, the Court dismisses the appeal.

**I.   Background**

**a.   The underlying Chapter 7 bankruptcy**

Appellant's underlying bankruptcy stems from a $20 million arbitration award obtained against him by Aish Hatorah New York ("Aish"), Appellant's former employer, and confirmed by the New York Supreme Court, Kings County.  *Aish Hatorah N.Y., Inc. v. Fetman*, 998 N.Y.S.2d 305, 2014 WL 4816212, at *14 (Sup. Ct. 2014) (unpublished table decision), *adhered to on reargument*, 20 N.Y.S.3d 291 (Sup. Ct. 2015).  The New York Supreme Court, Kings County, converted the arbitration award into a judgment against Fetman for $21.4 million (the "Arbitration Judgment").  (J., annexed to Declaration of Benjamin M. Oxenburg, Esq. in Support of Trustee's FRCP 12(b)(6) Motion to Dismiss Plaintiff's Complaint ("Oxenburg Decl.") as Ex. D, *Fetman*, No. 19-1067, Docket Entry No. 10-4.)

On August 11, 2015, Appellant's father filed an involuntary Chapter 7 bankruptcy petition against Appellant.  (Involuntary Petition, *In re Fetman*, No. 15-43716.)  On October 28, 2015, Appellee was appointed interim trustee.  (Notice of Appointment of Trustee, *In re Fetman*, No. 15-43716.)  On January 30, 2016, the Bankruptcy Court so-ordered a stipulation between

Appellant, Aish, and the Appellee, which modified the automatic stay[2] to permit Appellant to prosecute his appeals relating to the Arbitration Judgment in the New York Supreme Court Appellate Division, Second Department (the "Appellate Division"), (Stipulation Granting Partial Relief from Automatic Stay, *In re Fetman*, No. 15-43716 (E.D.N.Y. Jan. 30, 2016), Docket Entry No. 65), and on August 18, 2016, the Bankruptcy Court issued an order clarifying that Appellant could only prosecute four state court appeals, (*see* Order Clarifying Stipulation & Order, *In re Fetman*, No. 15-43716 (E.D.N.Y. Aug. 18, 2016), Docket Entry No. 124).

In June of 2017, after extensive litigation pertaining to enforcement of the Arbitration Judgment and sale by Appellee of two of Appellant's properties located at 4301 Tenth Avenue, Brooklyn, New York, and 4305 Tenth Avenue, Brooklyn, New York (the "Tenth Avenue Properties"), Appellant, Appellee, and Aish began settlement discussions. (*See* Letter dated June 23, 2017, *In re Fetman*, No. 15-43716 (E.D.N.Y. June 23, 2017), Docket Entry No. 215; Status Letter, *In re Fetman*, No. 15-43716 (E.D.N.Y. June 23, 2017), Docket Entry No. 216.) On November 17, 2017, the parties reached a basic agreement (the "Global Settlement").[3] On April 6, 2018, Appellee filed a motion for the Bankruptcy Court's approval of the Global Settlement, and Appellant, Appellee, and Aish, as well as several other parties in interest and counsel for each party, were all signatories to the Global Settlement. (Global Settlement 8–13, annexed to Motion to Approve Stipulation as Ex. A, *In re Fetman*, No. 15-43716 (E.D.N.Y. Apr. 6, 2018),

---

[2]  The filing of the involuntary petition against Appellant triggered the automatic stay pursuant to 11 U.S.C. § 362(a), which stayed the sale of properties owned by Appellant and prevented him from prosecuting his state court appeals from the Arbitration Judgment. (*See* Appellee Br. 4, Docket Entry No. 13.)

[3]  Appellee contends that for four months after the basic agreement, the parties negotiated "all of the settlement's terms." (*Id.* at 9.)

Docket Entry No. 276-1.)  The Global Settlement provided, *inter alia*, that Appellant would pay

Aish $2.5 million on or before April 23, 2018, to satisfy its judgment and stated that:

> The parties to the appeal of the Judgment in the New York Appellate
> Division, Second Department shall consent to Aish's motion to
> extend its time to file its opposition to the appeal.  In the event that
> there is a default under this Settlement Agreement and the terms of
> this agreement are not fully effectuated, the parties to the appeal
> shall consent to extend the time of the appeal so that Aish shall have
> at least one month after the time of the appeal has expired to
> file its opposition papers in the appeal.

(*Id.* ¶ 8.)  On April 6, 2018, Appellee filed a motion pursuant to Rule 9019 of the Federal Rules

of Bankruptcy Procedure requesting that the Bankruptcy Court approve of the Global Settlement.

(Motion to Approve Stipulation, *In re Fetman*, No. 15-43716 (E.D.N.Y. Apr. 6, 2018), Docket

Entry No. 276.)  On May 9, 2018, after a hearing on the motion, at which counsel for Appellant,

Appellee, and Aish were present, the Honorable Nancy H. Lord granted Appellee's motion and

issued an order approving the Global Settlement.  (Order Authorizing & Approving Global

Settlement, *In re Fetman*, No. 15-43716 (E.D.N.Y. May 9, 2018), Docket Entry No. 286.)

On March 26, 2018, Appellee filed an interim fee application seeking (1) an order

approving his counsel's attorneys' fees and expenses and (2) authorization for Appellee to pay

those attorneys' fees and expenses awarded by the Bankruptcy Court.  (Application for

Compensation, *In re Fetman*, No. 15-43716 (E.D.N.Y. Mar. 21, 2018), Docket Entry No. 272.)

On May 9, 2018, after a hearing at which counsel for Appellant, Appellee, and Aish were

present, the Bankruptcy Court noted that there was "no opposition" filed to Appellee's interim

fee application and approved the application.  (Order Approving Interim Application for

Attorneys for the Trustee, *In re Fetman*, No. 15-43716 (E.D.N.Y. May 10, 2018), Docket Entry

No. 285.)

On June 12, 2018, Appellant's then-counsel executed two stipulations agreeing to withdraw and discontinue with prejudice all of Appellant's pending appeals in the Appellate Division as well as pending litigation in the Supreme Court, Kings County. (Stipulation of Discontinuance with Prejudice, annexed to Oxenburg Decl. as Ex. H, *Fetman*, No. 19-1067, Docket Entry No. 10-8.) On August 2, 2018, the Appellate Division issued two orders granting the parties' stipulation and withdrawing all pending appeals. (Decision & Order on Application, annexed to Oxenburg Decl. as Ex. I, *Fetman*, No. 19-1067, Docket Entry No. 10-9.)

On March 21, 2019, Appellant, proceeding *pro se*, filed a motion to reduce interest owed under the Global Settlement, alleging that he owed Aish $550,000 less than the amount provided for in the Global Settlement. (Motion for Emergency Hearing, *In re Fetman*, No. 15-43716 (E.D.N.Y. Mar. 21, 2019), Docket Entry No. 319.) After a hearing at which Appellant, Appellee, and Aish appeared, on June 6, 2019, the Court ordered that Aish pay Appellant $3,333.34 and otherwise denied Appellant's motion to reduce interest. (Order Resolving Debtor's Motion, *In re Fetman*, No. 15-43716 (E.D.N.Y. June 6, 2019), Docket Entry No. 324.)

**b.    The Adversary Proceeding**

On May 28, 2019, Appellant commenced the Adversary Proceeding against Appellee. (Compl., *Fetman*, No. 19-1067.) Appellant argued that Appellee was engaged in "self-dealing[], self-enrichment[,] and gross misconduct in handling the case," and that Appellee acted in a "self-serving manner, counter to the basic and minimal fiduciary duty he has for the estate of the debtor." (*Id.* at 1.) In support, Appellant argued that Appellee: (1) "used every opportunity to stall and derail the appeal," (*id.* at 4), (2) "wanted to generate more legal bills and commissions from the sale" of one of Appellant's properties, (*id.* at 7), (3) caused an "inaccurate tax filing" relating to the sale of one of Appellant's properties which resulted in an overpayment of $52,000

to Appellee, (*id.*), and (4) permitted Aish's attorney to draft the Global Settlement while Appellant was away during Passover "without any way of communication with attorneys or a way to go over the documents" and did not ensure that Appellant received and understood the full Global Settlement, (*id.* at 9).

On July 12, 2019, Appellee moved to dismiss the Adversary Proceeding pursuant to Rule 7012 of the Federal Rules of Bankruptcy Procedure and Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.  (*See* Notice of Motion to Dismiss Adversary Proceeding, *Fetman*, No. 19-1067, Docket Entry No. 9.)  Appellee argued that dismissal was appropriate because (1) Appellee was entitled to quasi-judicial immunity as his actions on behalf of the estate were taken pursuant to a court order, and (2) Appellee was protected under the business-judgment rule.  (Memorandum of Law in Support of Motion to Dismiss Adversary Proceeding by Defendant Robert Musso, as Trustee, *Fetman*, No. 19-1067, Docket Entry No. 11.)

Appellant opposed the motion to dismiss, arguing that Appellee acted in his own interest, "shamelessly navigated th[e] case as to earn the most fees that he could get . . . with complete disregard to the statutory and general duties" required of him, and therefore should not "enjoy[] blanket immunity for his negligence and intentional malfeasance."  (Reply in Opposition to Trustee's Motion to Dismiss 1, 3, *Fetman*, No. 19-1067, Docket Entry No. 14.)

On November 19, 2019, Judge Lord held a hearing on Appellee's motion to dismiss (the "Hearing").  (Tr. of Proceedings before Hon. Nancy Lord dated Nov. 19, 2019 ("Hr'g Tr."), annexed to Oxenburg Decl. as Ex. A, Docket Entry No. 14-1.)  Judge Lord granted Appellee's motion and read portions of her decision into the record.  (*Id.* at 31:20–32:3.)  First, Judge Lord found that Appellee was protected by quasi-judicial immunity because he acted pursuant to a

6

court order after notice and a hearing with respect to all three issues raised by Appellant in the
Adversary Proceeding — abstention from the New York State litigation and appeal, the
negotiation and entry into the Global Settlement, and the entry of a fee application.  (*Id.* at
37:15–24.)  Judge Lord noted that Appellant "was present at the hearings, with counsel, during
which[] [the] Court approved each of these decisions by the trustee," and that, when Appellant
was present without counsel, "the Court made sure that [Appellant] understood what was going
on in the courtroom."  (*Id.*)  In addition, Judge Lord found that Appellant did not object to the fee
application "either in court or on the docket."  (*Id.* at 37:25–38:3.)  Second, Judge Lord found
that Appellee was also protected by the business-judgment rule because "the case law
conclusively supports trustee."  (*Id.* at 38:9–10.)  Judge Lord found that there was no evidence in
the record that Appellee abused the discretion afforded to him by the business-judgment rule
because he "handled the estate with complete transparency, obtained court-ordered approval of
every financial decision made in the case," and "employed a well-respected certified public
accountant to provide the reasoning for his decisions in the declaration" submitted in the
Adversary Proceeding.  (*Id.* at 38:10–19.)  Judge Lord further stated that "[t]here's not one shred
of evidence indicating that [the trustee] or his counsel or the accountant acted in bad faith."  (*Id.*
at 38:22–23.)  In addition, Judge Lord admonished Appellant for stalling and bringing the instant
Adversary Proceeding.  (*Id.* at 39:5–9.)

On February 14, 2020, the Bankruptcy Court issued a formal order granting Appellee's
motion to dismiss and dismissing the Adversary Proceeding (the "Bankruptcy Court Order").
(Bankruptcy Ct. Docs. 3, annexed to Notice of Appeal as Ex. 1, Docket Entry No. 1-1.)

c.    **Appeal from the Bankruptcy Court Order**

On February 28, 2020, Appellant docketed its notice of appeal from the Bankruptcy Court Order.  (Notice of Appeal.)  The Bankruptcy Court Order and related two docket entries indicating that the Order and a notice of appeal were filed were transmitted to the Court, however, Appellant's designation of the Bankruptcy Court record was not filed.  (*See* Notice of Bankruptcy R. Received, Docket Entry No. 2.)  On April 3, 2020, Appellee submitted a letter to the Court, stating that Appellant had not complied "with his obligations under FRBP 8009(a)(1) to designate the record and file a statement of issues to be presented."  (Letter dated Apr. 3, 2020, Docket Entry No. 3.)  On April 6, 2020, the Court received a letter from Appellant indicating that he was incapacitated when he contracted COVID-19 in March of 2020, (*see* Letter dated Apr. 6, 2020, Docket Entry No. 5), and in response, the Court extended the time for Appellant to serve and file his brief until June 4, 2020, (Order dated Apr. 17, 2020).  On June 3, 2020, Appellant filed his brief.  (Appellant Br., Docket Entry No. 11.)[4]  To date, Appellant has not designated the record on appeal or filed a statement of issues presented or otherwise complied with Rule 8009(a).

---

[4]  Appellant submitted two briefs — one on May 22, 2020, concerning a March 13, 2020 order by the Bankruptcy Court awarding accounting fees, (*see* Appellant Br. dated May 22, 2020, Docket Entry No. 10), and one on June 3, 2020, concerning dismissal of the Adversary Proceeding and alleged impropriety by Appellee (*see* Appellant Br., Docket Entry No. 11).  Because the Bankruptcy Court order awarding accounting fees is the subject of a separate appeal also before this Court, *see Fetman v. Musso*, No. 20-CV-1600, the Court only addresses the arguments presented in the June 3, 2020 brief concerning dismissal of the Adversary Proceeding.

## II.   Discussion

### a.   Standards of review

#### i.   Bankruptcy appeal

District courts have appellate jurisdiction over "final judgments, orders, and decrees" entered in bankruptcy court.  28 U.S.C. § 158(a)(1).  An order dismissing an adversarial proceeding is a final, appealable order.  *See Lehman Bros. Special Fin. Inc. v. Branch Banking & Tr. Co. (In re Lehman Bros. Holdings Inc.)*, 970 F.3d 91, 98 (2d Cir. 2020) (per curiam) (reviewing an order dismissing an adversarial proceeding); *Liquidation Tr. v. Daimler AG (In re Old Carco LLC)*, 509 F. App'x 77, 78 (2d Cir. 2013) (same).

On appeal, a district court reviews the legal conclusions of a bankruptcy court *de novo* and its factual findings for clear error.  *Wenegieme v. Macco*, No. 17-CV-1218, 2018 WL 334032, at *2 (E.D.N.Y. Jan. 9, 2018) (citing *Lubow Mach. Co. v. Bayshore Wire Prods. Corp. (In re Bayshore Wire Prods. Corp.)*, 209 F.3d 100, 103 (2d Cir. 2000)); *Washington v. Chapter 13 Tr.*, No. 19-CV-7028, 2020 WL 5077403, at *2 (E.D.N.Y. Aug. 26, 2020) (citing *In re Bayshore Wire Prods. Corp.*, 209 F.3d at 103).  "A finding is 'clearly erroneous' when, on consideration of the record as a whole, the reviewing court 'is left with the definite and firm conviction that a mistake has been committed.'"  *Bongiovanni v. Grubin*, No. 15-CV-2617, 2016 WL 4059349, at *3 (E.D.N.Y. July 28, 2016) (quoting *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 168 (2d Cir. 2001)).  The district court need not limit its review to the arguments raised or relied upon in the decision below but may affirm on any ground that finds support in the record. *See Wenegieme*, 2018 WL 334032, at *2.

### ii.   12(b)(6)

"Rule 7012(b) of the Federal Rules of Bankruptcy Procedure incorporates Federal Rule of Civil Procedure 12(b)(6) and permits a bankruptcy court to dismiss an adversary proceeding when a complaint fails to state a claim." *In re Lehman Bros. Holdings Inc.*, 970 F.3d at 98.  In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018) (quoting *Chambers v. Time Warner Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)); *see also Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quoting *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997)).  A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

### b.   Failure to comply with Rule 8009 of the Federal Rules of Bankruptcy Procedure

Appellee argues that the Court must dismiss the appeal because Appellant failed to comply with Rule 8009 of the Federal Rules of Bankruptcy Procedure.  (Appellee Br. 18.)  In support, Appellee contends that "at no time after he noticed this matter for appeal did [Appellant] file a designation of items to be included in the record and statement of issues to be presented," nor did he request an extension of time to do so.  (*Id.* at 18–19.)  Appellee argues that because

10

Appellant failed to comply with Rule 8009 and has not "made a showing of excusable neglect," Appellant's appeal must be dismissed.  (*Id.* at 19.)

In response, Appellant argues that he was "not required to file any further items from the record," and, in the alternative, that he has demonstrated excusable neglect.  (Appellant Reply 13, Docket Entry No. 16.)[5]  Appellant states that on February 27, 2020, he was told by the "clerk of the Bankruptcy [C]ourt . . . that [he] do[es] not have to file anything else beyond the notice of appeal and the actual brief."  (*Id.*)  Appellant contends that he was under the impression that the record was mailed to this Court because filings on the Bankruptcy Court docket indicated that the Bankruptcy Court record was transmitted to this Court.  (*Id.* at 13–14 (citing docket entries from the Bankruptcy Court docket and stating that "[o]ne can reasonably infer, as I did, that the complete record was being transmitted to the appeals court directly from the lower court, as I was told by the pro-se clerk").)  In addition, Appellant asserts that because he was "not able to get to the court" due to closures associated with the COVID-19 pandemic and was ill with COVID-19 during March and early April of 2020, the deadlines associated with Rule 8009 should be suspended and the Court should "excuse the tardiness of such filing."  (*Id.* at 14.)

Pursuant to Rule 8009 of the Federal Rules of Bankruptcy Procedure, a litigant appealing a decision of the bankruptcy court "must file with the bankruptcy clerk and serve on the appellee a designation of the items to be included in the record on appeal and a statement of the issues to be presented . . . within [fourteen] days after . . . the appellant's notice of appeal as of right becomes effective under Rule 8002."  Fed. R. Bankr. P. 8009(a)(1).

---

[5]  Because Appellant's filings do not contain page numbers, the Court refers to the pagination assigned by the electronic filing system.

The Second Circuit has held that "[f]iling a Designation and Statement is mandatory" and that a late filing should only be accepted if the appellant demonstrates that the "failure to act was the result of excusable neglect." *Lynch v. U.S. Internal Revenue Serv. (In re Lynch)*, 430 F.3d 600, 603 (2d Cir. 2005) (per curiam) (quoting Fed. R. Bankr. P. 9006(b)(1)); *see also Coe v. MF Glob. Holdings Ltd. (In re MF Glob. Holdings Ltd.)*, No. 17-CV-167, 2017 WL 744603, at *1 (S.D.N.Y. Feb. 23, 2017).  To determine whether a party has demonstrated excusable neglect, courts consider four factors identified by the Supreme Court in *Pioneer Investment Services Co. v. Brunswick Associates Ltd. P'ship*, 507 U.S. 380, 395 (1993): (1) "the danger of prejudice to the [non-movant]," (2) "the length of the delay and its potential impact on judicial proceedings," (3) "the reason for the delay, including whether it was within the reasonable control of the movant," and (4) "whether the movant acted in good faith." *Koch v. Preuss*, No. 19-CV-2830, 2020 WL 1304084, at *3 (S.D.N.Y. Mar. 18, 2020) (quoting *Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.)*, 419 F.3d 115, 122 (2d Cir. 2005)); *Carlebach v. Togut (In re 199 E. 7th St. LLC)*, No. 17-CV-545, 2017 WL 2226592, at *2 (S.D.N.Y. May 19, 2017) (quoting *Pioneer Inv. Servs. Co.*, 507 U.S. at 395).  The Second Circuit has emphasized that courts should "focus[] on the third factor" and explained that it takes a "hard line" in applying this test. *In re Enron Corp.*, 419 F.3d at 121–22 (quoting *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366, 368 (2d Cir. 2003)); *Koch*, 2020 WL 1304084, at *3 (quoting *In re Enron Corp.*, 419 F.2d at 121–22).  "Failure to follow the clear dictates of a court rule will generally not constitute such excusable neglect." *In re Lynch*, 430 F.3d at 604 (quoting *Canfield v. Van Atta Buick/GMC Truck, Inc.*, 127 F.3d 248, 250 (2d Cir. 1997)).  "[A] bankruptcy appeal cannot proceed without a Designation and Statement.  If a party fails to file a Designation and

Statement on time, and an untimely filing is disallowed because no excusable neglect has been shown, the appeal has to be at an end." *Id.* at 605.

In determining whether it is appropriate to dismiss a bankruptcy appeal for failure to perfect an appeal, "[c]ourts should also take into consideration whether counsel's behavior evinces bad faith or a pattern of negligence; whether any other parties were prejudiced by the errant litigant's conduct; and whether the litigant should be granted the opportunity to rectify the problem." *In re Harris*, 464 F.3d 263, 272 (2d Cir. 2006). This inquiry generally requires district courts "to provide notice of the potential dismissal and an opportunity for the errant litigant to explain its conduct." *Id.* (quoting *English-Speaking Union v. Johnson*, 353 F.3d 1013, 1022 (2d Cir. 2004)).

Appellant's notice of appeal was docketed on February 28, 2020. (Notice of Appeal.) Therefore, by operation of Rule 8009, and as indicated on the Adversary Proceeding docket, Appellant's Designation and Statement were due by March 12, 2020. (*See* Notice of Appeal & Statement of Election, *Fetman*, No. 19-1067, Docket Entry No. 24.) Assuming that Appellant's extension of time to file his brief due to his illness and disruptions caused by the COVID-19 pandemic apply to the deadline to file the Designation and Statement, (*see* Order dated Apr. 17, 2020), Appellant nevertheless failed to submit these documents within the extension period provided by the Court or to request a further extension. Appellant's contention that he was misinformed by the Bankruptcy Court clerk on or about February 27, 2020 — prior to Appellee's April 3, 2020 letter to the Court pointing out Appellant's failure to comply with Rule 8009 — likely does not rise to the level of excusable neglect as the Second Circuit has stated that "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect." *In re Enron Corp.*, 419 F.3d at 126 (quoting *Pioneer Inv. Servs. Co.*, 507

13

U.S. at 392); *Alphas v. Pereira (In re The Alphas Co. of N.Y. Inc.)*, No. 15-CV-1106, 2016 WL

347341, at *3 (S.D.N.Y. Jan. 27, 2016) (finding that misunderstanding on the part of appellant's

counsel as to whether he was representing client which resulted in delayed designation and

statement is not excusable neglect); *In re Fletcher Int'l, Ltd.*, 536 B.R. 551, 558 (S.D.N.Y.

2015), *aff'd sub nom. In the Matter of Fletcher Int'l, Ltd.*, 661 F. App'x 124 (2d Cir. 2016)

("While it is true that Appellant is proceeding *pro se*, that is insufficient on its own to constitute

excusable neglect, since *pro se* litigants are 'generally afforded some latitude, [but] . . . are

nonetheless required to learn and comply with procedural rules.'" (alteration in original) (quoting

*Truong v. Kartzman (In re Truong)*, 388 B.R. 43, 45 (S.D.N.Y. 2008))); *Burgos v. Pergament*,

No. 11-CV-5257, 2012 WL 3929953, at *5 (E.D.N.Y. Sept. 10, 2012) (finding the *pro se*

appellant's "[l]ack of familiarity with the rules is not a sufficient explanation to constitute

excusable neglect" and stating that appellant's "alleged inability to comprehend and adhere to

the requirements of Rule 8009 is particularly inexcusable in light of her compliance with other

procedural requirements, including her timely filing of the notice of appeal").

     While it appears that Appellant has not demonstrated excusable neglect, in view of

Appellant's representation that he was affected by the COVID-19 pandemic, and because

Appellee has not demonstrated prejudice from Appellant's failure to comply with Rule 8009, the

Court nevertheless addresses the merits of Appellant's appeal based on the Hearing transcript

provided by Appellee, the Bankruptcy Court Order, and the records publicly filed on the

Bankruptcy Court docket.[6]  *See Taneja v. Health Law Firm*, No. 17-CV-5618, 2017 WL

---

     [6]  At least one court in this district has also recognized that a court facing an incomplete
record of a bankruptcy appeal may obtain the missing filings pursuant to its power under Rule
8019 of the Federal Rules of Bankruptcy Procedure — Rule 8028's predecessor. *See Frostbaum
v. Ochs*, 277 B.R. 470, 473 n.1 (E.D.N.Y. May 16, 2002) (obtaining, pursuant to Rule 8019, a

11475266, at *2 n.4 (S.D.N.Y. Nov. 20, 2017) ("[B]ecause [the appellant] is a *pro se* litigant,

and because there is no prejudice to [the appellee], the [c]ourt will consider the transcript of the

sanctions hearing docketed in the underlying bankruptcy case."); *In re Emmons-Sheepshead Bay*

*Dev. LLC*, 518 B.R. 212, 218 (E.D.N.Y. 2014) (deciding bankruptcy appeal on the merits even

when appellant failed to provide a complete record on appeal and noting that "courts have also

resolved appeals when the record, although incomplete, is sufficient to enable an informed

review of the parties' arguments").  In addition, although Appellee provided Appellant with

notice that his appeal was deficient, the Court did not explicitly warn Appellant that his appeal

may be dismissed should he continue to fail to comply with Rule 8009.  *See In re Harris*, 464

F.3d at 273 (noting, in finding that dismissal of debtor's appeal was not warranted, that "the

district court did not give [the appellant] any opportunity to rectify the situation by obtaining the

. . . transcript and placing it in the record before the court").  Accordingly, in an abundance of

caution and to avoid further delay of a decision on the merits, the Court declines to dismiss

---

bankruptcy court hearing transcript and order "to expedite a decision on the merits and to avoid
requests for additional time or to refile the appeal" when the *pro se* appellant failed to designate
filings essential for review on the merits); *see also In re Harris*, 464 F.3d 263, 273 (2d Cir. 2006)
("In *Frostbaum*, the debtor failed to include the record of the hearing that served as the basis of
the ruling, but the district court obtained the transcripts pursuant [to] its powers under
Bankruptcy Rule 8019, which permits a district court to suspend the requirements of certain
bankruptcy rules in the interest of expediting a case.  We, of course, do not mean this observation
to require a district court to allow every errant litigant an opportunity to rectify the situation or to
force a court to remedy a problem *sua sponte*, but we think the ability of a party or the court to
cure a defective record is a consideration that the district court should assess on remand on the
particular facts of this case." (citation omitted) (citing *Frostbaum*, 277 B.R. at 473 n.1)); *In re
Owens*, No. 19-CV-2491, 2020 WL 1911541, at *1 (D.D.C. Apr. 20, 2020) ("As [the appellant]
is appealing *pro se*, the [c]ourt will take judicial notice of items not included in the record to
avoid further delay in deciding this appeal on the merits." (citing *Frostbaum*, 277 B.R. at 473
n.1)); *In re Emmons-Sheepshead Bay Dev. LLC*, 518 B.R. 212, 218 n.3 (E.D.N.Y. 2014) (citing
*Frostbaum*, 277 B.R. at 473 n.1).

Appellant's appeal for failure to comply with Rule 8009 and assesses Appellant's appeal on the merits.

### c.    The Bankruptcy Court did not err in dismissing the Adversary Proceeding

Appellant makes twenty-five arguments on appeal as to why the Bankruptcy Court erred in granting Appellee's motion to dismiss the Adversary Proceeding, several of which were not raised before the Bankruptcy Court.[7]  (*See* Appellant Br.)

In response, Appellee argues that the Court should not consider the arguments raised by Appellee for the first time on appeal.[8]  (Appellee Br. 20–21.)

---

[7]  Appellant argues that: (1) Appellee received preferential treatment during the underlying Bankruptcy Proceeding and Adversary Proceeding, (2) Appellee requested a compensation hearing after dismissal of the Adversary Proceeding, which demonstrated his interest in "generating more fee income for himself," (3) quasi-judicial immunity is negated by Appellant's "multiple actions of self-dealing and self-enrichment," (4) a trustee's actions not based on "judicial consent and without a hearing" make a trustee's actions "suspect as to his motives," (5) Appellee's legal fees are too high and it was not necessary for two attorneys to attend hearings, (6) Appellee was obligated to object to Aish's claim against the estate based on the Appellate Division's holding in *Leifer v. Gross*, 32 N.Y.S.3d 514 (App. Div. 2016) that Sunday arbitrations are "null and void" even after Judge Lord barred Appellant from litigating this claim pursuant to the automatic stay, and (7) Appellee delayed settlement of the case to increase legal fees and settling commissions.  (Appellant Br. 19–22.)

[8]  The Court declines to consider Appellant's arguments that were not raised in the Bankruptcy Court.  *See Channer v. Penn. Higher Educ. Assistance Agency (In re Channer)*, 833 F. App'x 502, 505 n.13 (2d Cir. 2020) (declining to consider arguments "not raise[d] in bankruptcy proceedings"); *Osborne v. Tulis*, 594 F. App'x 39, 41 (2d Cir. 2015) (declining to consider arguments not raised before the bankruptcy court); *Common Law Settlement Counsel v. Travelers Indemnity Co. (In re Johns-Manville Corp.)*, 759 F.3d 206, 219 (2d Cir. 2014) (finding that failing to raise argument in the bankruptcy court waived the argument even if raised in the district court); *J.K.L. Sales, Inc. v. Flaxer (In re Lehr Constr. Corp.)*, No. 16-CV-4048, 2017 WL 464428, at *4 (S.D.N.Y. Feb. 2, 2017) (declining to consider arguments not raised before the bankruptcy court because this "means that counsel has waived the opportunity to assert this argument"); *3939 WPR Funding LLC v. Campbell (In re Campbell)*, 539 B.R. 66, 72 (S.D.N.Y. 2015) ("Any arguments not raised in the bankruptcy court are considered waived; unless such a waiver results in manifest injustice, the new arguments will not be considered on appeal.").

In dismissing Appellant's Adversary Proceeding complaint, which alleged self-dealing, self-enrichment, and "gross misconduct" on the part of Appellee as trustee of the estate, (*see* Notice of Appeal; Complaint, *Fetman*, No. 19-1067), the Bankruptcy Court found that Appellee is entitled to quasi-judicial immunity and that his actions were properly taken as a matter of business judgment.  (*See generally* Bankruptcy Ct. Docs.; Hr'g Tr.)

### i.   Quasi-judicial immunity

Appellant argues that Appellee should not be protected by quasi-judicial immunity and allowed to "hide behind his [q]uasi-judicial cloak" because Appellee did not object to the Arbitration Judgment in state court and acted outside the scope of the Global Settlement by agreeing to pay Aish a $50,000 per month penalty if the settlement payments were not paid by the required deadline.  (Appellant Br. 8–18.)  Appellant contends both that he was never a part of the Global Settlement negotiations and never agreed to its terms, and that he was blackmailed into agreeing to the Global Settlement.  (*Id.* at 16.)  In addition, Appellant asserts that he did not agree to the interim fee application and that his attorney did not object as he requested.  (*Id.* at 18–19.)

Appellee argues that the Bankruptcy Court properly dismissed the Adversary Proceeding because he is entitled to quasi-judicial immunity as "all of [Appellee's] acts on behalf of the estate were undertaken pursuant to an [o]rder from the court, after all interested parties, including [Appellant], were afforded notice, an opportunity to object[,] and a hearing."  (Appellee Br. 22.)  In response to Appellant's arguments that Appellee "somehow frustrated his attempts to further litigate" confirmation of the Arbitration Judgment in state court, Appellee contends that the Bankruptcy Court made it "expressly clear that the Trustee had no duties or rights with respect to [Appellant's] various appeals," that the Global Settlement allowed Appellant to continue

prosecuting his state court appeals, and that Appellant was the one who "voluntarily agreed to withdraw all of his appeals in the Second Department" and "discontinue the Kings County Supreme [Court] litigation." (*Id.* at 23.) In response to Appellant's claims that he was not aware of the Global Settlement terms and was blackmailed into agreeing to the Global Settlement, Appellee argues that he is immunized from Appellant's claims because the Global Settlement was approved by the Bankruptcy Court after notice, an opportunity to object, and a hearing. (*Id.* at 24.) Appellee also argues that Appellant was aware of the terms, was present at the February 15, 2018 hearing when the terms were discussed, and had an opportunity to object when served with Appellant's motion to approve of the Global Settlement. (*Id.*) In response to Appellant's claims that Appellee took actions "solely to increase his fees to the detriment of the estate," Appellee argues that Appellant cannot "now be heard to complain about the Trustee's attorneys' fees[] after he declined the opportunity to do so" and also because the "Trustee's interim fee application . . . was subsequently approved by Judge Lord." (*Id.* at 24–25.)

Courts in the Second Circuit extend quasi-judicial immunity to bankruptcy trustees and find bankruptcy trustees immune from suit for personal liability for acts taken pursuant to a court order, after notice and a hearing. *See Smith v. Silverman (In re Smith)*, 645 F.3d 186, 190 (2d Cir. 2011) ("[A] bankruptcy trustee is immune from suit for personal liability for acts taken as a matter of business judgment in acting in accordance with statutory or other duty or pursuant to court order." (alteration in original) (quoting *Dana Com. Credit Corp. v. Nisselson (In re Ctr. Teleprods., Inc.)*, 112 B.R. 567, 578 (Bankr. S.D.N.Y. 1990))); *Peterson v. Wells Fargo Bank, N.A. (In re Peterson)*, 585 B.R. 1, 14 n.10 (Bankr. D. Conn. 2018) ("[T]o the extent that the [f]ormer [t]rustee's conduct stems from her business judgment in performing her statutory duties, such conduct may not form the basis for liability."); *Richmond v. Caruso (In re Richmond)*, 580

18

B.R. 617, 625 (Bankr. E.D.N.Y. 2017) (quoting *Smith*, 645 F.3d at 190); *Pergament v. Varela (In re Varela)*, 530 B.R. 573, 583 (Bankr. E.D.N.Y. 2015) ("A bankruptcy trustee is entitled to quasi-judicial immunity where the trustee acts pursuant to a court order, after notice and a hearing." (first citing *Mosser v. Darrow*, 341 U.S. 267, 274–75 (1951); and then citing *Weissman v. Hassett*, 47 B.R. 462, 467 (S.D.N.Y. 1985))); *Picard v. Chais (In re Bernard L. Madoff Inv. Sec. LLC)*, 440 B.R. 282, 290 (Bankr. S.D.N.Y. 2010) ("In the Second Circuit, a bankruptcy trustee is a quasi-judicial official 'immune from suit for personal liability for acts taken as a matter of business judgment in acting in accordance with statutory or other duty or pursuant to court order.'" (quoting *In re Smith*, 400 B.R. 370, 377 (Bankr. E.D.N.Y. 2009))); *see also Lebovits v. Scheffel (In re Lehal Realty Assocs.)*, 101 F.3d 272, 276 (2d Cir. 1996) (stating that "[a] trustee in bankruptcy is an officer of the court that appoints him" and that "the court that appointed the trustee has a strong interest in protecting him from unjustified personal liability for acts taken within the scope of his official duties"). A trustee is shielded from personal liability "for his lawful exercise of judgment and discretion, even if, in hindsight, such interpretations of law were incorrect." *In re Varela*, 530 B.R. at 583 (quoting *In re Bernard L. Madoff Inv. Sec. LLC*, 440 B.R. at 290).

A trustee may, however, be personally liable for "negligent or willful violations" of a trustee's fiduciary duties, or if the trustee takes *ultra vires* actions. *See id.* ("A trustee's quasi-judicial immunity is not unlimited. For instance, in the Second Circuit, a trustee may be personally liable for negligent or willful violations of his fiduciary duties." (citing *In re Gorski*, 766 F.2d 723, 727 (2d Cir. 1985))). When a trustee "negligently obtains a court order, or negligently or willfully carries out a court order he knew or should have known he wrongfully

19

procured, however, personal liability will attach." *In re Ctr. Teleprods., Inc.*, 112 B.R. 567, 578 (Bankr. S.D.N.Y. 1990).

The Bankruptcy Court correctly determined that Appellee was entitled to quasi-judicial immunity as trustee of the bankruptcy estate. As the court stated on the record at the Hearing, each of the actions Appellant seeks to challenge — Appellee's "abstention from the New York State litigation and appeal," the Global Settlement, and the interim fee application — were approved by court order after notice and a hearing. (Hr'g Tr. 37:15–20.) The Bankruptcy Court stated on the record that at each hearing, Appellant was present, "with counsel, during which, [the] Court approved each of these decisions by the trustee. And when [Appellant] was [there] without counsel, the [Bankruptcy] Court made sure that [Appellant] understood what was going on in the courtroom." (*Id.* at 37:20–24.) Furthermore, with respect to the state court litigation and appeals, pursuant to the Bankruptcy Court order appointing Appellee as trustee, Appellee had no right or duty to be involved with Appellant's litigation because the "prosecution of the [Appellant's] appeal of the state court judgment and related state court rulings" and the "appellate rights are the exclusive province of the [Appellant]." (Order Appointing Interim Trustee 2, *In re Fetman*, No. 15-43716 (Bankr. E.D.N.Y. Oct. 26, 2015), Docket Entry No. 14.)

In addition, with respect to the $50,000 penalty payments that Appellant claims were improperly included in the Global Settlement, any agreement on the part of Appellee to pay such penalties was undertaken pursuant to the Global Settlement, which was approved by the Bankruptcy Court after notice and a hearing. (*See* Hr'g Tr. 21:14–22:8; Order Authorizing & Approving Global Settlement, *In re Fetman*, No. 15-43716; Global Settlement 4, *In re Fetman*, No. 15-43716.) To the extent Appellant seeks to challenge the Bankruptcy Court's order approving of the Global Settlement or the terms of the Global Settlement itself, the Court notes

20

that such collateral attacks are not permitted in this appeal as Appellant did not appeal the

Bankruptcy Court's order approving of the Global Settlement.  *See Yagman v. Kittay*, 670 F.

App'x 743, 743–44 (2d Cir. 2016) (stating that the appellant's failure to "appeal from the

bankruptcy court's order approving the settlement" bars him from later "challenging that order");

*Mauro Motors Inc. v. Old Carco LLC*, 420 F. App'x 89, 89 (2d Cir. 2011) ("Appellants present

no evidence or arguments in this collateral attack that could not have been presented in a timely

appeal from the bankruptcy court's original decision.  Having failed to appeal from that decision,

[a]ppellants may not now attack it collaterally absent newly discovered evidence of fraud on the

court."); *Blakely v. Messer (In re 477 W. 142nd St. Hous. Dev. Fund Corp.)*, 346 F. Supp. 3d

413, 414 (S.D.N.Y. 2018) (prohibiting the appellant from attacking a separate bankruptcy court

order collaterally by appealing the bankruptcy court's denial of a separate motion when the time

for appealing the first order expired).

Finally, Appellant's arguments concerning Appellee's fees as trustee are similarly

unavailing because Appellee allocated attorneys' fees after the Bankruptcy Court granted

Appellee's interim fee application on May 9, 2018, in the amount of "$259,546.50, less

$4,375.00 awarded and paid as sanctions, for a net award of $255,171.50, and reimbursement of

expenses through March 22, 2018 in the sum of $3,738.37, less $272.18 awarded and paid as

sanctions, for a net award of $3,466.19."  (Order Approving Interim Application for Attorneys

for the Trustee 2, *In re Fetman*, No. 15-43716.)  Appellant did not object to this order and his

only arguments on appeal are that the amount of interim compensation is "asinine" and that his

then-attorney did not object to the amount of fees.  (Appellant Br. 18–19.)  However, none of

this negates that Appellee allocated his fees pursuant to a court order granted after notice and an

opportunity to be heard.  (Hr'g Tr. 37:15–24; Order Approving Interim Application for Attorneys for the Trustee, *In re Fetman*, No. 15-43716.)

Because Appellee's actions were all taken pursuant to orders by the Bankruptcy Court after notice and a hearing, the Bankruptcy Court properly found that Appellee was entitled to quasi-judicial immunity.  *See In re Smith*, 400 B.R. 370, 377 (Bankr. E.D.N.Y. 2009), *aff'd*, 426 B.R. 435 (E.D.N.Y. 2010), *aff'd*, 645 F.3d 186 (2d Cir. 2011); *In re Varela*, 530 B.R. at 583 (determining bankruptcy trustee is entitled to quasi-judicial immunity when acting pursuant to a court order, after notice and a hearing).

### ii.   Business-judgment rule

The gravamen of Appellant's several arguments on appeal is that Appellee acted in a self-serving manner and therefore did not act in the best interest of the estate.  (*See* Appellant Br. 6–22.)  Appellant asserts three general areas of alleged misdeeds and self-serving behavior: that Appellee (1) overpaid $52,000 in taxes after the Tenth Avenue Properties were sold, (2) frustrated the underlying state court litigation and appeals and failed to challenge the Arbitration Judgment, and (3) impermissibly inflated his legal fees in various ways.  (*Id.* at 6–19.)

Appellee argues that his actions are protected by the business-judgment rule because they were good faith attempts to manage the debtor's estate.  (Appellee Br. 25.)  In response to Appellant's argument that Appellee overpaid $52,000 in taxes, Appellee argues that the Court should dismiss this claim because this allegation is "entirely unsupported."  (*Id.* at 26.)  Appellee contends that shortly after the sale of the Tenth Avenue Properties, Appellant "began a campaign to try to have the capital gains tax avoided or reduced by suggesting various improper ways to structure the sale of 4305 Tenth" such as selling Appellant's share in the property to Appellant's

wife's nonprofit organization, which Appellee rejected. (*Id.*) Appellee also argues that because he is not an accountant, he hired a "court-approved, experienced expert to calculate the estate's tax liability" and relied on the accountant's expertise when paying the required taxes. (*Id.* at 27–28.) Appellee argues that because Appellee's actions "involved his reasonable and good faith business judgment," the Court should "not entertain [Appellant's] unfounded allegations" regarding Appellee's management of the estate. (*Id.* at 28.)

The Bankruptcy Court correctly determined that Appellee's actions were properly taken as a matter of business judgment.

A bankruptcy trustee is given a "substantial degree of discretion" to determine how to administer the estate entrusted to his care. *In re Kerner*, 599 B.R. 751, 756 (Bankr. S.D.N.Y. 2019) (quoting *In re Consol. Indus. Corp.*, 330 B.R. 712, 715 (Bankr. N.D. Ind. 2005)). Courts will generally not "entertain objections to the trustee's management of the debtor's estate where the trustee's conduct involves [his] good faith business judgment, is made on a reasonable basis, and is within the scope of the trustee's authority under the [Bankruptcy] Code." *Id.* (quoting *In re Belmonte*, 524 B.R. 17, 29 (Bankr. E.D.N.Y. 2015)); *In re Pursuit Holdings (NY), LLC*, No. 18-12738, 2019 WL 1220928, at *10 (Bankr. S.D.N.Y. Mar. 12, 2019) (quoting *In re Belmonte*, 524 B.R. at 29).

The Court does not find any clear factual error in the Bankruptcy Court's conclusion that Appellee's actions were not taken in "abuse of the substantial discretion [that] he is given under the business-judgment rule." (Hr'g Tr. 38:9–13); *Androse Assocs. of Allaire v. Great Atl. & Pac. Tea Co. (In re Great Atl. & Pac. Tea Co.)*, 472 B.R. 666, 673 (S.D.N.Y. 2012) (reviewing decisions made by the bankruptcy court pursuant to the business-judgment rule for clear error). As the Bankruptcy Court stated during the Hearing, Appellee employed a certified public

accountant to determine how to satisfy the tax liability incurred by the sale of the Tenth Avenue

Properties and provided a declaration summarizing the reasoning for his decisions, handled the

estate with transparency, and "obtained court-ordered approval of every financial decision made

in the case." (*Id.* at 38:13–20); *see In re Bakalis*, 220 B.R. 525, 532 (Bankr. E.D.N.Y. 1998)

(deferring to a trustee's judgment that an offer was most advantageous to the estate, after trustee

"convincingly articulated the reasons for recommending the bid" and "supported his reasoning at

the subsequent evidentiary hearings").

Appellant's many arguments alleging various ways Appellee acted in a self-serving

manner are unpersuasive and unsupported by the record. For example, Appellee was not

required to manipulate the sale of one of the Tenth Avenue Properties in the manner suggested

by Appellant, which Appellee indicated may subject the estate to penalties for tax-avoidance.[9]

*See In re Bakalis*, 220 B.R. at 531–32 (stating that challenges to a bankruptcy trustee's discretion

when selling estate property are judged under the highly deferential business judgment test and

that "a bankruptcy trustee is a conservator of the estate and must, to the extent possible, be risk

averse"). Moreover, although Appellee was not required to listen to Appellant's various

suggestions for handling the tax, the record indicates that Appellant nevertheless had the

opportunity to discuss his ideas with the accountant hired by Appellee:

> THE COURT:  There was the idea that you could increase the basis,
> right, with improvements.  And they sat with you and did that.  You
> had various suggestions; some of them were accepted, some of them
> were not, because Mr. Broderick, who's the professional in the case,

---

[9] Appellant's claim that Appellee failed to exercise proper business judgment in
executing the sale of one of the Tenth Avenue Properties for allegedly failing to collect past due
rent or otherwise maximizing potential income from the property is similarly meritless. *See In re
Taub*, 470 B.R. 273, 279 (E.D.N.Y. 2012) (finding debtor's argument that the trustee acted with
poor business judgment because he "has not collected past due rent or sought to maximize the
potential income from the property" before selling it unpersuasive because debtor had a full and
fair opportunity to object to the trustee's sale).

and he -- he's in a lot of cases.  I maybe set eyes on the man once or twice here, but he's retained by a lot of trustees in cases.  He said -- and I think I've set eyes on him in this case -- in this case.  He said, Judge -- he said, I can't do that.  He said, that's not right, that's wrong --

MR. FETMAN: Your Honor --

THE COURT: -- that would be wrong for me to do that --

. . .

THE COURT:  So there were certain things that he said yes you can do, and you tried to raise the basis, and there were other things he said you couldn't do.  I remember exactly where everyone was standing when we had that conversation.

(Hr'g Tr. 26:13–27:9.)

Appellee also was not required to object to the Arbitration Judgment or litigate Appellant's claims in state court.  *See, e.g.*, *In re Smith*, 645 F.3d at 190 ("[T]he trustee exercised his sound business judgment in declining to assume the expense of raising and/or pursuing the legal claims identified by appellants.").  The Bankruptcy Court, on the record at the Hearing, noted that Appellee's lack of duties and rights with respect to the state court appeals was precisely why Appellant was granted a carve out from the automatic stay to proceed with the state court litigation, stating:

THE COURT:  You are a separate party.  We allowed you to do -- to carve out and proceed in state court, because the trustee could have made a valid business judgment not to proceed with that litigation.  And rather than have that happen where you'd have a dead end and, if it were given to the trustee and the trustee, in the typical case, has the full authority --

MR. FETMAN:  Okay.

THE COURT:  Rather than do that, it was carved out so you could proceed and have it.

(Hr'g Tr. 24:8–17.)  As the Court noted above, the record reflects that pursuant to an order issued by the Bankruptcy Court, appellate rights are the exclusive province of Appellant.  (Order

Appointing Interim Trustee, *In re Fetman*, No. 15-43716.)  Accordingly, Appellee did not impermissibly exercise his business judgment in deciding not to pursue Appellant's claims in state court.  In addition, nothing in the record or in Appellant's arguments before the Court undermines the Bankruptcy Court's conclusion that Appellee did not improperly inflate his legal fees.  To the contrary, Appellee provided detailed accounting of the basis for his fees submitted alongside his interim fee application submitted in March of 2018 and, after notice and a hearing attended by both Appellant and his counsel, the Bankruptcy Court approved his application, noting that no party objected to the fees.  (Application for Compensation, *In re Fetman*, No. 15-43716; Order Approving Interim Application for Attorneys for the Trustee, *In re Fetman*, No. 15-43716.)

Because there is no evidence in the record to suggest that Appellee did not make decisions for the estate "on a reasonable basis," and because Appellee sought approval from the Bankruptcy Court before making financial decisions on behalf of the estate, the Bankruptcy Court did not err when it found that Appellee properly exercised his business judgment.

**III.  Conclusion**

For the foregoing reasons, the Court denies Appellant's appeal and affirms the Bankruptcy Court Order dismissing the Adversary Proceeding.  The Clerk of Court is respectfully directed to enter judgment and close this case.

Dated: February 25, 2021
      Brooklyn, New York

                          SO ORDERED:

                          _____s/ MKB_____
                          MARGO K. BRODIE
                          United States District Judge